**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DENIS MBULIH,<br><br>Plaintiff,<br><br>v.<br><br>ATTORNEY GENERAL OF THE UNITED STATES, et al.,<br><br>Defendants. | ) | CASE NO. 5:26 CV 2115<br><br>JUDGE JOHN R. ADAMS<br><br><u>MEMORANDUM OF OPINION AND ORDER</u> |

*Pro se* Plaintiff Denis Mbulih filed this civil rights action to collaterally attack his continued detention, his deportation proceedings, and his pending state criminal case. His wife Atam Glory Takeh is also listed as a Plaintiff, although there are no claims asserting a violation of her rights and it does not appear that she signed the Complaint. This is Mbulih's third attempt to challenge these proceedings in this Federal Court. He filed two prior Petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2241. *See Mbulih v. Immigration and Customs Enforcement*, No. 4:26 CV 530 (N.D. Ohio May 21, 2026)(Pearson, J.) ("Mbulih I"); *Mbulih v. Greene*, No. 4:26 CV 1909 (N.D. Ohio filed Aug. 13, 2026)(Report and Recommendation filed August 31, 2026)(Helmick, J.)("Mbulih II"). Mbulih has now filed a civil rights Complaint asserting claims under the Fourth, Fifth , Sixth, and Fourteenth Amendment against the United States Attorney General, the Mahoning County and Summit County Sheriffs, the Acting Secretary for United States Citizenship and Immigration Services ("ICE"), the ICE District Director for the Detroit Field Office, the Summit County Common Pleas Court Judge and Prosecutor assigned to his state criminal case, and the Secretary of the United States Department of Homeland Security. He seeks monetary damages and orders from this Court to release him from custody, remove all

mention of terrorist activities from his immigration proceedings, and order the state court to either prosecute him or exonerate him.

## I. Background

To provide relevant background, the Court draws from the undisputed facts Mbulih I and Mbulih II. Denis Mbulih is a citizen of Cameroon. He entered the United States as a non-immigrant visitor in June 2010 and overstayed his visa. Following year, the Department of Homeland Security ("DHS") gave him a Notice to Appear for removal proceedings. At the removal hearing, an Immigration Judge found him removable to Cameroon. Mbulih then sought relief from removal under the Convention Against Torture (CAT), but the Immigration Judge denied the relief finding that Mbulih had engaged in terrorist activity by providing material support to the Ambazonia Governing Council (AGC), an Anglophobic separatist group in Cameroon. On April 20, 2026, the Board of Immigration Appeals affirmed the denial and issued a final order of removal. Mbulih moved for a stay of his removal, but the United States Sixth Circuit Court of Appeals denied the stay.

Meanwhile, in December 2025, local police arrested Mbulih in Summit County, Ohio and charged him with aggravated burglary, aggravated menacing, assault, and resisting arrest. *See State of Ohio v. Mbulih*, No. CR-2025-12-32804 (Summit Cty Comm. Pl. Ct. filed Dec. 18, 2025). He was released from custody four days later but was immediately arrested by ICE and detained at the Northeast Ohio Correctional Center ("NEOCC") in Mahoning County, Ohio. He applied for release on bond; however, the Immigration Judge denied the request stating that Mbulih is subject to mandatory detention pursuant to INA § 1226 (C)(1)(D), which mandates the detention of aliens removeable for terrorism-related grounds. The judge also determined he posed a danger to the community. The Board of Immigration Appeals denied his CAT appeal on April 20, 2026 and issued a final order of removal.

On March 4, 2026, while he was detained at NEOCC, Mbulih filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Mbulih I). He filed a supplement to his Petition on April 21, 2026, raising six grounds for relief: (1) unlawful detention under 8 U.S.C. § 1226; (2) detention without meaningful bond process; (3) indefinite detention without due process; (4) unconstitutionality of his custody determination; (5) unlawful arrest without a signed warrant; and (6) violation of his right to a speedy trial. He demanded immediate release from detention or federal accommodations to attend his criminal proceedings in state court. The Court considered the Petition on its merits and denied it.

In May 2026, Mbulih was transferred from NEOCC to the Summit County Jail for his state criminal proceedings. In June 2026, the Summit County Common Pleas Court Judge granted his release on bond and placed him on house arrest with an ankle monitor. ICE, however, immediately took him back into custody and transferred him to the Mahoning County Jail where he remains incarcerated.

On August 13, 2026, Mbulih filed a second Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Mbulih II). He asserted four grounds for relief: (1) arbitrary detention; (2) violation of his right to stand trial; (3) ICE intrusion into state judicial process; and (4) denial of fair trial due to ICE preventing his release on house arrest and preventing his case from moving forward. United States Magistrate Judge James E. Grimes, Jr. issued a Report and Recommendation to United States District Court Judge Jeffrey J. Helmick to dismiss the Petition on its merits. The case is still pending.

Mbulih has now filed this civil rights action under *Bivens*[1] for the federal Defendants and under 42 U.S.C. § 1983 for the state Defendants. Although he asserts nine counts in his

[1] *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

Complaint, the claims are repetitive and focus on ICE's execution of its detainer after Mbulih posted bond and was released from pretrial detention in his criminal case. He asserts that the Summit County Sheriff and ICE colluded to prevent his pretrial release in violation of the Fourth Amendment. He alleges that Judge Towell allowed the Summit County Sheriff to take him into custody on an ICE detainer after she granted him release on bond but does not specify a legal claim associated with this statement. He asserts that the prosecutor excluded exculpatory evidence in the grand jury hearings in order to obtain an indictment and then colluded with ICE to move him from Summit County to prevent him from standing trial and filing a lawsuit. He contends that the Mahoning County Sheriff prevented him from attending his criminal trial which was scheduled for July 6, 2026 and August 11, 2026, in violation the Fifth and Fourteenth Amendments. The Court takes notices, however, that the docket in *State of Ohio v. Mbulih*, No. CR-2025-12-32804 (Summit Cty Comm. Pl. Ct. filed Dec. 18, 2025) indicates that the case has not yet been set for trial. A final pretrial was set for July 6, 2026. There are no other docket entries setting court dates after the July 6 pretrial. It is unclear why Mbulih believes a court date was set for August 11, 2026. Finally, he claims that the Attorney General and ICE used erroneous allegations of providing material support to terrorists so that his immigration application would be denied. He asks this Court to order ICE to remove the terrorism designation from his file and release him from custody. He also seeks either exoneration from the state charges or an immediate trial, and monetary damages.

## II. Standard of Review

A District Court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the court concludes that the Complaint fails to state a claim upon which relief may be granted, or if the Plaintiff seeks monetary relief from a Defendant who is immune from such relief. 28 U.S.C.

§1915A; *Siller v. Dean*, No. 99-5323, 2000 WL 145167 , at *2 (6th Cir. Feb. 1, 2000); *see Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); *In re Bendectin Litig*., 857 F.2d 290, 300 (6th Cir. 1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir.1998).

## III. Analysis

As an initial matter, although Mbulih's wife is listed as a Plaintiff, the Complaint does not contain any allegations that pertain to her, is devoid of any claims pertaining to an alleged violation of her rights and lacks her signature. In general, a party may plead and conduct his or her case in person or through a licensed attorney. See 28 U.S.C. § 1654; *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991). An adult litigant who wishes to proceed *pro se* must personally sign the Complaint to invoke this Court's jurisdiction. See 28 U.S.C. §

1654; *Steelman v. Thomas*, No. 87-6260, 1988 WL 54071 (6th Cir. May 26, 1988). Because she did not sign the Complaint, she is not a party to this action.

Moreover, even if she had signed the pleading, she would lack standing to raise any of the claims asserted in this case. A party must assert her own legal rights and interests and cannot rest her claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Allstate Insurance Co. v. Wayne County*, 760 F.2d 689, 693 (6th Cir. 1985). All of the allegations in the Complaint pertain to her husband's deportation proceedings, his detention, and his criminal trial. The fact that Takeh may be collaterally affected by the adjudication of her husband's rights does not necessarily extend the Court's Article III powers to her. *Allstate Insurance Co*., 760 F.2d at 692. She is dismissed as a party to this case.

Furthermore, Mbulih's claims against the United States Attorney General, the Acting Secretary of ICE, the ICE District Director for the Detroit Field Office, and the Secretary of the Department of Homeland Security cannot proceed under *Bivens*. Congress provided a specific damages remedy through 42 U.S.C. § 1983 for Plaintiffs whose constitutional rights were violated by state officials; however, they did not provide a corresponding remedy for constitutional violations committed by federal officials. *Ziglar v. Abbasi*, 582 U.S. 120, 131-32 (2017). In *Bivens*, decided in 1971, the Court recognized an implied damages action to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. Since then, the Court allowed *Bivens* remedies in only two other contexts: (1) in a Fifth Amendment gender-discrimination case, *Davis v. Passman*, 442 U.S. 228 (1979); and (2) in an Eighth Amendment Cruel and Unusual Punishments Clause case, *Carlson v. Green*, 446 U.S. 14 (1980). The Court has not approved of an implied damages remedy under the Constitution itself. *Ziglar*, 582 U.S. at 131-32.

Therefore, before proceeding to the merits of Mbulih's claims against these Federal Government officials, the Court must decide whether *Bivens* provides a cause of action for those claims. He asserts claims under the Fourth, Fifth, Sixth and Fourteenth Amendments. Due process claims and claims asserted under the Sixth Amendment do not fall within the limited contexts of recognized *Bivens* claims. Moreover, while some Fourth Amendment claims have been recognized in the context of unreasonable searches and seizures, they were limited to challenges raised in the context of an arrest. Mbulih was already detained jail and is challenging the transfer from the custody of the State of Ohio to ICE custody as a result of a detainer. This is not a recognized *Bivens* claim.

Furthermore, the Complaint contains no specific allegations of conduct by any of the federal officials. Instead, it appears that they were named solely because they are the heads of the agencies involved in immigration decisions. Where *Bivens* provides a cause of action, it can only be asserted against individual officers acting under color of federal law. *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 70 (2001). It does not support an action against the United States government, its agencies, or any of its officers sued in their official capacities. *Id*; *see Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994). Such claim would be asserted against the United States itself and would be barred by sovereign immunity. Because Mbulih does not allege any facts suggesting that any of the individual federal officials was personally involved with the actions giving rise to his claims, it appears that they are sued in their official capacities. The claims against them therefore are barred by sovereign immunity.

Mbulih's claims against the Common Pleas Court Judge, the County Prosecutor and the two sheriffs are governed by 42 U.S.C. § 1983. The Judge and the Prosecutor, however, are absolutely immune from suits for damages for claims based on decisions and actions taken in the course of the performance of their official duties. *Mireles v. Waco*, 502 U.S. 9, 9 (1991)(Judicial

immunity); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997)(Judicial immunity); *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)(Prosecutorial immunity); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993)(Prosecutorial immunity). All of his claims against the Judge and the Prosecutor concern decisions they made in the course of presiding over Mbulih's criminal proceedings or with respect to the Prosecutor, in the court of representing the State of Ohio in those proceedings. These Defendants are absolutely immune from suits for damages.

Mbulih also asks that the Judge and Prosecutor immediately exonerate him from the state charges or immediately hold a trial. The comity-based abstention doctrine developed in the Supreme Court case of *Younger v. Harris*, 401 U.S. 37 (1971) prevents federal courts from interfering in pending state-court criminal proceedings, even if there is an allegation of a constitutional violation. *Younger*, 401 U.S. at 45. The *Younger* abstention doctrine reflects the strong federal policy against federal interference with state judicial proceedings and promotes the presumption that state courts are equally competent at safeguarding federal constitutional rights. *Id*. Younger abstention is not a question of jurisdiction but is rather based on "strong policies counseling against the exercise of such jurisdiction." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc*., 477 U.S. 619, 626 (1986). The *Younger* abstention doctrine may be raised *sua sponte* by a federal court. *O'Neill v. Coughlan*, 511 F.3d 638, 642 (6th Cir. 2008).

When a person is the target of an ongoing state action involving important state matters, he or she cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. *Watts v. Burkhart*, 854 F.2d 839, 844-48 (6th Cir. 1988). If the state Defendant files such a case, *Younger* abstention requires the federal court to defer to the state proceeding. *Id*; *see also Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 15 (1987). Based on these principles, abstention is appropriate if: (1) state proceedings are on-going; (2) the state proceedings implicate important state interests; and (3) the state proceedings

afford an adequate opportunity to raise federal questions. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Abstention is mandated whether the state court proceeding is criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interferes with the legitimate activities of the state." *Younger*, 401 U.S. at 44.

All three factors supporting abstention are present. The state criminal case is still pending in the Summit County Court of Common Pleas this Court acknowledges that state court criminal matters are of paramount state interest. *See Younger*, 401 U.S. at 44-45. The third requirement of *Younger* is that Mbulih must have an opportunity to assert his federal challenges in the state court proceeding. The pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the federal claims. *Moore v. Sims*, 442 U.S. 415, 430 (1979). The burden at this point rests on Mbulih to demonstrate that state procedural law bars presentation of his claims. *Pennzoil Co.*, 481 U.S. at 14. The docket reflects that he is represented by counsel in those criminal proceedings. His attorney can raise his concerns regarding the trial date. This Court will not interfere in the pending state court proceedings.

Finally, Plaintiff's claims against the two county sheriff's must be dismissed. He offers so few factual allegations concerning their actions that it is difficult to determine the nature of his claims against them. Among his many duties as the Sheriff of Mahoning County, Jerry Greene is charged with supervising the operations of the Mahoning County Jail. Mbulih alleges that he was prevented from attending his trial. Aside from the fact that his case has not actually been set for trial, he does not allege any facts to suggest that Greene took an active role in any decision that prevented Mbulih from attending or participating in court proceedings. Similarly, Mbulih contends that Summit County Sheriff Fatheree colluded with ICE when they executed their detainer. He provides no other allegations to explain this statement or give any indication of

how her actions could have violated his constitutional rights. Merely facilitating the enforcement of a detainer is not a denial of constitutional rights. While Mbulih may be objecting to the ICE detainer itself, that is a question that must be addressed by immigration courts. He cannot collaterally attack the detainer or his Final Order of Removal in a civil rights action asserted against the county sheriff. There are no allegations suggesting that the sheriff herself violated his constitutional rights. Both of the claims against the sheriffs are asserted solely as a legal conclusions, which are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

## IV. Conclusion

Accordingly, this action is dismissed for pursuant to 28 U.S.C. § 1915A . The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

Date: 11/2/2026

*/s/ John R. Adams*
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE